UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS. CASE NO: 2:15-cr-146-FtM-UACM

TAYLOR MARIE AMMONS

---

**ORDER[1]**

This matter comes before the Court on Defendant Taylor Marie Ammons' Motion to Suppress (Doc. #69) filed on April 22, 2016, in which Defendants Bradley Wes Gambill and Dominic Maurice Lynch joined (Doc. #72). The Government filed a Response in Opposition (Doc. #78) on May 6, 2016. The Court held a hearing for the Motion on June 28, 2016. The Government was represented by represented by Assistant United States Attorney Yolande Viacava. Defendant Taylor Marie Ammons was present and represented by attorney Spencer A. Cordell; Defendant Bradley Gambill was present and represented by attorney Lee Hollander; and Defendant Dominic Maurice Lynch was present and represented by Assistant Federal Public Defender George Ellis Summers. The matter is ripe for review.

**BACKGROUND**

On August 20, 2015, Det. McKissack secured a search warrant for 139 Nicholas Parkway E, Cape Coral, Florida (the Residence) based on allegations of drug activity.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

Although Det. McKissack secured the warrant, he did not participate in its execution because he was out of town. When the warrant was exectuted, Cape Coral Police Department ("CCPD") officers observed evidence of counterfeiting in plain sight, including scraps of bills, misprints, counterfeit bills, a canon color copier, and fine linen stationary paper. As a result, Defendants Ammons, Gambill, and Lynch were arrested and charged with counterfeiting.

At the hearing on this Motion, Det. McKissack admitted that some of the information used in his affidavit for the search warrant was false and that other information was incorrect because of a typographical error. Based on the affidavit's false and incorrect information, Defendants argue the evidence found during the execution of the search warrant should be suppressed

**DISCUSSION**

Defendants argue the evidence from the August 20, 2015 search should be suppressed because the search warrant affidavit was based upon incorrect and misleading information due to either deliberate falsehood or of reckless disregard for the truth and without the false information there would be no probable cause for the issuance of the search warrant.

Affidavits supporting arrest warrants are presumptively valid. *See U.S. v. Kapordelis,* 569 F.3d 1291, 1309 (11th Cir.2009) (citing *Franks v. Delaware,* 438 U.S. 154, 171 (1978)). Therefore, to secure an evidentiary hearing on a motion to suppress based on alleged misrepresentations or omissions in a search warrant affidavit, a defendant must make a substantial preliminary showing that the affiant made false statements, either intentionally or with reckless disregard for the truth, pointing specifically

to the portions of the affidavit claimed to be false, and that the false statements were necessary to the finding of probable cause. *See Kapordelis,* 569 F.3d at 1309.

When assessing whether the alleged false statements and omissions were material, the Court must disregard those portions of the affidavit which the defendant has shown are arguably false or misleading. *See id.* (citing *Franks,* 438 U.S. at 172). Once those portions are disregarded, the Court must look at the remaining portions of the affidavit and determine whether the addition of the omitted facts would have prevented a finding of probable cause. *See Kapordelis,* 569 F.3d at 1309. The defendant bears the burden of showing that, "absent those misrepresentations or omissions, probable cause would have been lacking." *Id.* (citing *U.S. v. Novaton,* 271 F.3d 968, 987 (11th Cir.2001)). "[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Kapordelis,* 569 F.3d at 1309 (citation omitted).

Defendants attack four paragraphs in Det. McKissack's affidavit, claiming these paragraphs contain false or misleading information. First, Defendants attack paragraph two, which affirms that an anonymous tipster provided the tip that three individuals, Deanna Sorenson, Bradley Gambill and Johnnie Jackson, were allegedly selling narcotics out of the Residence. Second, Defendants attack paragraph four, in which Det. McKissack swears that he observed multiple vehicles arriving at the Residence and then departing within three to five minutes of arrival. Third, Defendants attack paragraph six, which notes that Det. McKissack observed multiple vehicles coming and going from the Residence. Fourth, Defendants attack paragraph seven, which provides that Det. McKissack conducted a trash collection from 220 Nicholas Parkway E, Cape Coral,

Florida, and found marijuana residue, blunt wrappers, mail from Bradley Gambill, a pill bottle, and a CVS prescription for Deanna Sorenson. The Court will analyze each paragraph in turn.

**A. Paragraph Two**

Defendants first attack paragraph two of the affidavit, which states, in pertinent part:

> In the month of July 2015, the Cape Coral Police Department received anonymous information in reference to a residence where narcotics were being sold; according to the tip, Deanna Sorenson, Bradley Gambill, and Johnnie Jackson has been selling marijuana and other narcotics from their residence located at 139 Nicholas Parkway E, Cape Coral, Lee County, Florida. Based on the anonymous information, your affiant started an investigation of the residence.

(Gov't. Ex. #1, ¶2). Contrary to the affidavit, Defendants argue that the anonymous tip actually came from a neighbor of the Residence, known to Det. Tufts, who reported suspicious activity at the Residence to her. Defendants note that Det. McKissack failed to inform the issuing judge of this fact because having an anonymous tipster added credibility to his affidavit. Defendants also argue that the names of the individuals were not provided by the anonymous tipster, but were added to the affidavit by Det. McKissack to bolster its credibility. Defendants further argue that the neighbor never mentioned narcotics activity, and instead reported suspicious activity due to the number of cars coming and going from the Residence—activity that occurred at all times of the day and night. Based on these arguments, Defendants contend that paragraph two should be removed from the affidavit so that the Court can determine whether probable cause would have existed absent this false information. The Court agrees.

During the hearing, Det. McKissack testified that he received an email from then Sgt. Michael Catania, which included information from Det. Theresa Tufts.[2] (Govt. Ex. #2). As a result of this email, Det. McKissack was assigned the case and began an investigation into the Residence. (Doc. #111, p. 11: 6-7). Det. McKissack testified that he drove by the Residence, ran tags, got reports, looked at DAVID pictures, among other activities. (Doc. #111, p. 11: 9-13). He also spoke with Det. Tufts about the case. (Doc. #111, p. 12: 4-5). Det. McKissack testified that she told him that the person that talked to her believed there was narcotics activity at that house based on the amount of traffic coming and going from the Residence and the way vehicles were coming to the house. (Doc. #111, p. 12: 17-20). Notably, Det. McKissack admitted that the term selling narcotics or selling marijuana did not come from the anonymous tipster, but rather came directly from Det. Tufts during their conversation. (Doc. #111, p. 104, 13-25). Det. Tufts informed Det. McKissack that the informant was a neighbor of the Residence, who wished to remain anonymous. (Doc. #111, p. 102: 9-22).

Importantly, during his testimony, Det. McKissack admitted that the statement in paragraph two that reads "according to the tip, Deanna Sorenson, Bradley Gambill, and Johnnie Jackson has [sic] been selling marijuana and other narcotics from their residence located at 139 Nicholas Parkway E, Cape Coral, Lee County, Florida" was false. (Gov't. Ex. A, at p.4). Det. McKissack also admitted that the Defendants' names were not

[2] The Email contained the following information: "Rosie and I were approached at a bank meeting yesterday about an address in Cape Coral (139 Nicholas Pkwy East, blue habitat for humanity house) where there is said to be a lot of activity going on at all hours of the day and night. There is a black Porsche Cheyenne that parks at the house and a silver vehicle that pulls through the yard to the rear of the residence to back the car all the way up to the residence wall. The silver vehicle along with other vehicle traffic sometimes drive to the house by entering off the street just north of the house then driving through the yards. The vehicles are seen speaking with the residents through a window and only stay for short periods of time… Let me know if you need any contact info for the lady…"

provided by the anonymous tipster. Instead, Det. McKissack added the names after his own investigation and again acknowledged that the information that was contained in the affidavit was false. (Doc. #111, p. 103:12-25; p. 104: 2-12).

Based on this testimony and a careful analysis of the information contained within paragraph two of the affidavit, it appears that Det. McKissack attempted to bolster the credibility of the information contained within paragraph two of the affidavit, therefore demonstrating a reckless disregard for the truth. *Kapordelis,* 569 F.3d at 1309. Specifically, there was no anonymous tip. Det. Tufts received a tip from a neighbor of the Residence. Although the neighbor wished to remain anonymous, their information was readily available. Moreover, it was clearly erroneous that "according to the tip, Deanna Sorenson, Bradley Gambill, and Johnnie Jackson [had] been selling marijuana and other narcotics from their residence."

Had Det. McKissack been truthful regarding the tip, the fact that it was his investigation that revealed the names of the individuals at the residence and the fact that he believed there was suspicious activity consistent with narcotics transactions, there would be no issue with paragraph two. However, because he included information in the affidavit that was untruthful, that information cannot stand. Paragraph two, in its entirety, must be excised from the affidavit.

The Court will now turn to paragraph four.

**B. Paragraph Four**

Defendants' second attack focuses on paragraph four, which states, in pertinent part:

> During the Month of July 2015, your affiant conducted random surveillance of 139 Nicholas Parkway E on multiple

> occasions; during daytime and nighttime hours, your affiant saw vehicular traffic consistent with narcotic activity. Multiple vehicles drove to the residence (throughout the day and night), parked on the driveway, and the driver of each vehicle entered and left the residence approximately three to five minutes after their arrival. Based on your affiant's training and experience as a narcotics detective, your affiant recognizes these short visits and the heavy vehicular traffic to be associated with the sale of narcotics from within the residence.

(Gov't.s Ex. #1 ¶4).

Defendants argue that this paragraph also contains misleading information, and should therefore also be excised from the affidavit. Defendants contend the affidavit is unreliable because it states only that Det. McKissack performed surveillance on the Residence and observed activity consistent with the sale of narcotics. Defendants assert this language is deficient because it does not describe the frequency of dates Det. McKissack observed such acts, nor what make and model vehicles he observed coming and going during his surveillance.

An officer need not include all information gleaned from his observations of a residence into the search warrant affidavit. Instead, an officer needs to put only enough information to establish probable cause to believe that there is a fair probability that contraband or evidence of a crime will be found in the particular place. *Illinois v. Gates*, 462 U.S. 213, 232 (1983). The Court does not take issue with Det. McKissack failing to include the logs of hours of his surveillance, how long the surveillance took place, the make and model of the vehicles that came and went from the residence, etc. That said, the use of the terms "multiple vehicles" and "heavy vehicular traffic" is troubling given Det. McKissack's testimony at the hearing. During his testimony, Det. McKissack said he observed only three cars coming and going during all of his observations. And he could

not say whether or not the cars belonged to individuals who lived in the Residence. (Doc. #111, p. 21:11-17). Det. McKissack also testified that he had no documentation regarding the types of vehicles or people he witnessed coming and going from the Residence during his observations. (Doc. #111, p. 109:12-17). Contrary to the information that Det. McKissack included in his affidavit, stating that he observed multiple vehicles coming and going from the Residence, the Court does not find three vehicles stopping at the Residence to be heavy vehicular traffic. Therefore, the Court finds good cause to strike the terms "multiple" and "heavy" from paragraph four of the affidavit.

Defendants also direct the Court's attention to the fact that Det. McKissack's testimony at the hearing is inconsistent with his testimony under oath at an earlier deposition. At the hearing, Det. McKissack testified that he observed the residence on five to seven occasions. (Doc. #111, p. 64:3-20). In his deposition, however, Det. McKissack testified that he observed the residence on seven or eight occasions. When pressed on the issue at the hearing, Det. McKissack admitted that there was discrepancy between his deposition testimony and his testimony at the hearing regarding the number of times he observed the Residence. (Doc. #111, p. 64:3-20). Nevertheless, the Court does not find that this discrepancy is sufficient to find that Det. McKissack deliberately showed a reckless disregard for the truth as to the times he observed the residence.

Defendants further note that the information contained in paragraph four of the affidavit is identical, except for the dates and street addresses, as the language used in paragraph four of other affidavits used to apply for search warrants at other locations. (Def. Ex. C, D, and E). Defendants suggest that the language regarding surveillance at the Residence may have, in fact, been part of an earlier affidavit prepared by Det.

McKissack, which was merely cut and pasted. Det. McKissack admitted that he cut and pasted information from previous search warrant affidavits into paragraph four of the instant affidavit. But Det. McKissack also explained that he changed the dates and addresses of the respective observations. (Doc. #111, p. 109:8-13).

Regarding the cutting and pasting of verbiage into this search warrant affidavit, the Court does not find fault with this procedure IF, and ONLY IF, the observations of the affiant match the verbiage that was cut and pasted into the affidavit. Most importantly, the information contained within the search warrant affidavit must be true and correct no matter its origin.

Based on the foregoing, the Court declines to strike paragraph four in its entirety. The Court will now turn to paragraph six.

**C. Paragraph Six**

Defendants next attack paragraph six, which states, in pertinent part:

> As the investigation continued, your affiant continued observing multiple vehicles coming and going from the residence. The driver of each vehicle parked on the driveway, entered the residence, and left the area approximately three to five minutes after their arrival. Your affiant wasn't able to collect the trash the following week due to the trash not being out.

(Gov't's Ex. #1, ¶6). Defendants argue that paragraph six suffers from many of the same deficiencies as the prior paragraphs. More specifically, paragraph six is cut and pasted from other search warrant affidavits. Defendants also find the three to five minute arrival and departure interval language suspect. Moreover, Det. McKissack ends paragraph six by stating "[y]our affiant wasn't able to collect the trash the following week due to the trash not being out." (Gov't.s Ex. #1 ¶6). This language, according to Defendants, was repeated verbatim as part of another affidavit for a search warrant previously sought by

Det. McKissack. (Def. Ex. C). Defendants argue the repetition of the same language in multiple affidavits makes Det. McKissack's affidavit unreliable.

As previously stated, the Court does not find fault with an officer cutting and pasting information from one warrant affidavit into another warrant affidavit IF the information that is copied is verified as true and correct and sworn to by the officer submitting the affidavit. That said, the Court accepts Det. McKissack's sworn statement that the driver of each vehicle parked on the driveway, entered the residence, and left the area approximately three to five minutes after their arrival. Further, it is plausible that the trash was not available for a subsequent trash pull at the Residence, and there is no evidence that contradicts this statement.[3] Therefore, the Court will leave paragraph six as it stands and take it into account when determining probable cause, after excising the false statements made either intentionally or with reckless disregard for the truth. Lastly, the Court will now turn to paragraph seven.

**D. Paragraph Seven**

Paragraph seven addresses the second trash pull and states, in pertinent part:

> On August 12, 2015, your affiant conducted a trash collection from 220 Nicholas Parkway E, Cape Coral, Florida. Your Affiant took ties and secured garbage bags, which were located curbside in front of the residence. Upon searching the trash, Your Affiant found marijuana residue, blunt wrappers and mail from Bradley Gambill, pill bottle and CVS prescription with Deanna Sorenson [sic] name on them in the trash. The marijuana residue was field tested by your Affiant, who received positive results. All of the evidence collected was packaged, sealed and then subsequently relinquished to evidence at the Cape Coral Police Department.

[3] Even if the Court were to take out the information regarding the trash not being available for subsequent trash pull, this would not affect the Court's determination that there still remains probable cause in the search warrant affidavit to issue the warrant.

(Gov't.'s Ex. #1, ¶7). Defendants argue that the second trash pull was taken from 220 Nicholas Parkway E, Cape Coral, Florida, and not from the Residence, 139 Nicholas Parkway E. The Court disagrees.

At the hearing, Det. McKissack affirmed that he conducted *two* trash pulls at the Residence and that the 220 address was a typo due to cutting and pasting the address from another search warrant sought earlier that year. (Doc. #111, p. 110:10-11). Moreover, the Government offered evidence supporting this testimony. Photos of the trash pull entered into evidence show mail from Bradley Gambill with the address of 139 Nicholas Parkway E and a pill bottle with a CVS prescription label for Deanna Sorenson. (Gov't.'s Ex. 4E and 4F). Notably, the evidence notation labeling the second trash pull on August 12, 2015, states that the pull was made at 139 Nicholas Parkway E. (Gov't.'s Ex. 4B). And Det. Hicks testified that he was present during both trash pulls on July 22, 2015, and August 12, 2015, and that the second trash pull was taken from 139 Nicholas Parkway E.

Clearly, there is sufficient evidence to support Det. McKissack's testimony that the second trash pull on August 12, 2015, was performed at the Residence and the listing of the 220 address in paragraph seven was a typographical error. Such a typographical error – i.e., the inadvertent use of the wrong address - does not invalidate the search warrant. See *United States v. Ofshe*, 817 F.2d 1508, 1514 (11th Cir. 1987) (citation omitted); *see also United States v. Burke,* 784 F.2d 1090,1092 (11th Cir.1992) (holding that an erroneous description of premises to be searched does not necessarily render a warrant invalid). At most, the fact that the wrong address was sworn to in the affidavit demonstrates the carelessness that Det. McKissack exhibited throughout the warrant

process. But this typographical error is not enough to invalidate paragraph seven. *Id.* Therefore, paragraph seven will not be excised from the affidavit.

**CONCLUSION**

Setting aside the affidavit's false and misleading material contained within paragraphs two and four, the Court must now look to see if probable cause exists in the remainder of the affidavit. *United States v. Novaton*, 271 F.3d 968, 986 (11th Cir. 2001) (citing *Franks*, 438 U.S. at 171-172). "Probable cause to support a search warrant exists when the totality of the circumstances allows the conclusion that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Mitchell*, 503 F. App'x 751, 754 (11th Cir. 2013) (citation omitted); *Gates,* 462 U.S. at 238. An affidavit in request of a search warrant "should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *Mitchell*, 503 F. App'x at 754 (citing *United States v. Martin, 297 F.3d 1308, 1314 (11th Cir.2002)*).

Even with the false and misleading information removed from paragraphs two and four, the affidavit still contains sufficient information to establish the requisite probable cause to issue a search warrant. Det. Tufts provided information that caused Det. McKissack to perform his own surveillance at the Residence. He noted at least three vehicles coming and going at all times of the day and night from the Residence. Det. McKissack observed the driver of each vehicle park on the driveway, enter the residence, and leave the area approximately three to five minutes after their arrival. (Gov't. Ex #1, ¶6). Two trash pulls were performed, and marijuana residue, a pipe used to smoke

marijuana, and a roach were found in the trash. (Gov't. Ex. #1, ¶¶ 5 and 7). All these facts are indicative of narcotics activity. So, even after removing the misleading statements from the affidavit, there remains sufficient facts to establish a connection between Defendants and the Residence, and a link between the Residence and the alleged criminal activity. Consequently, the Motion to Suppress is denied.

Accordingly, it is now **ORDERED:**

Defendant Taylor Marie Ammons' Motion to Suppress (Doc. #69), in which Defendants Bradley Wes Gambill and Dominic Maurice Lynch joined (Doc. #72), is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this 15th day of July 2016.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record